# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**REMO HARRISON DANIELS,**

    Plaintiff,

    v.                                                            Case No. 17-CV-681

**DR. DEBLANC, et al.,**

    Defendants.

## SCREENING ORDER

Remo Daniels, a Wisconsin state prisoner who is representing himself, filed a civil rights complaint under 42 U.S.C. § 1983. I issued an amended report and recommendation, screening Daniels' amended complaint, on November 15, 2017. (Docket # 42.) The case was then transferred to the Honorable Pamela Pepper to rule on the report and recommendation. In the interim, the Wisconsin Department of Justice and this court entered into a Memorandum of Understanding that gives limited consent to magistrate judges to screen prisoner complaints. I therefore have jurisdiction for purposes of screening the complaint. Daniels has filed another amended complaint, but it is identical to his first amended complaint. I therefore withdraw the report and recommendation and will issue an order screening his amended complaint. Daniels may proceed on his Eighth Amendment claims for failure to prevent harm and deliberate indifference against all defendants but may not proceed on his harassment, retaliation, and misconduct claims. I will also address the motions currently pending and order the defendants to respond to Daniels' motion for a preliminary injunction and protective order.

*Screening of Plaintiff's Amended Complaint*

Federal law requires that I screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). I must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally frivolous or malicious, that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b). Upon reading Daniels' second amended complaint, I immediately noticed two issues: the first is that he incorporates a previous complaint by reference, which he may not do.

To state a claim, a complaint must contain sufficient factual matter, accepted as true, "that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). However, a complaint that offers mere "labels and conclusions" or a "formulaic recitation of the elements of a cause of action will not do." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). To state a claim, a complaint must contain sufficient factual matter, accepted as true, "that is plausible on its face." *Id.* (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The complaint's allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (citation omitted).

In considering whether a complaint states a claim, courts should follow the principles set forth in *Twombly* by first, "identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679. Legal conclusions must be supported by factual allegations. *Id.* If there are well-pleaded factual allegations, the court must, second, "assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.*

To proceed under 42 U.S.C. § 1983, a plaintiff must allege that: 1) he was deprived of a right secured by the Constitution or laws of the United States; and 2) the defendant was acting under color of state law. *Buchanan-Moore v. County of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009) (citing *Kramer v. Village of North Fond du Lac*, 384 F.3d 856, 861 (7th Cir. 2004)); *see also Gomez v. Toledo*, 446 U.S. 635, 640 (1980). I will give a *pro se* plaintiff's allegations, "however inartfully pleaded," a liberal construction. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

*Allegations in the Complaint*

According to the complaint, Daniels had a Behavior Management Plan in place because of certain mental health issues, including engaging in self-harm. (Am. Compl. at 1.) On February 17, 2017, Daniels was placed on observation status around 12:00 p.m. (*Id.*) Around 3:00 p.m., Officers Geschke and Johnson gave him a hard meal tray and left his food trap open, despite knowing that while on observation status, Daniels was to receive an observation status meal tray and his food trap was to stay closed. (*Id.*) Daniels alleges that he attempted to return the tray many times. (*Id.* at 1-2.)

Around 3:50 p.m., Sgt. Tritt walked up and asked Daniels why his food trap was open. (*Id.* at 2.) Daniels told her that the officers gave him a hard tray. (*Id.*) Despite this

knowledge, Sgt. Tritt walked off. (*Id.*) Daniels alleges that around 4:01 p.m. he began beating his hand with the tray Officers Geschke and Johnson had given him. (*Id.*) Officer Pach walked up and asked Daniels to give him the tray. (*Id.*) Daniels alleges that he told Officer Pach how he had received the tray and Officer Pach responded that he did not care and walked off. (*Id.*) Daniels continued to engage in self-harming behavior with the tray. (*Id.*)

Around 4:10 p.m., Sgt. Bouzak arrived and told Daniels to give him the tray Daniels was harming himself with. (*Id.*) Daniels told Sgt. Bouzak what had happened and Sgt. Bouzak said he did not care. (*Id.*) Daniels gave Sgt. Bouzak the tray; however, Sgt. Bouzak denied Daniels medical care. (*Id.*) Around 4:40 p.m., Daniels began cutting himself because he was angry and because he was denied medical treatment for his hand. (*Id.*)

Around 5 p.m., Daniels alleges that he saw a nurse in health services for the selfharm. (*Id.*) While at health services, Daniels spoke to Lt. Kuepper, who asked Daniels whether he was going to continue engaging in self-harm, to which Daniels responded affirmatively. (*Id.*) Lt. Kuepper called Dr. Deblanc, who told Lt. Kuepper to put Daniels back in his cell, despite knowing that Daniels was not going to cease engaging in self-harm. (*Id.*) Daniels alleges that he told Lt. Kuepper that he was going to continue harming himself, to which Lt. Kuepper responded that he did not care. (*Id.*) Daniels alleges that Lt. Kuepper's lack of concern was retaliatory. (*Id.*)

Daniels alleges that pursuant to his behavior management plan, he was supposed to be placed in full bed restraints due to his tendency to engage in self-harm and all of the defendants knew about this plan and did not care. (*Id.*) On February 18, 2017 at 12 a.m., Daniels cut himself and there was a lot of blood. (*Id.* at 2-3.) Officer Peter joked about

Daniels cutting himself and asked what was she supposed to do? (*Id.* at 3.) Officer Peter stated that if she called for help it would wake up the other inmates. (*Id.*) Daniels told her to put him in full bed restraints, which she did not do. (*Id.*)

After a while, Officer Peter got Sgt. Keller to come to Daniels' cell and Sgt. Keller stated that there was no nurse in that day and there was nothing he could do at that time. (*Id.*) Daniels continued to engage in self-harm. (*Id.*) Around 1 a.m., an officer told Sgt. Keller that Daniels was engaging in self-harm and Daniels was pulled out of the observation cell and placed in a cage. (*Id.*) Daniels was told that a supervisor would be there at 2 a.m. (*Id.*) Around 2 a.m., Capt. Olson and Lt. Nelson arrived and denied Daniels medical care. (*Id.*) Capt. Olson called Dr. Deblanc, who told Capt. Olson to put Daniels back in his cell. (*Id.*) Daniels again asked to be put into full bed restraints to protect him from self-harm, but Lt. Nelson refused. (*Id.*)

Around 2:05 a.m., a white inmate began harming himself by hitting his head against a door. (*Id.*) Capt. Olson called Dr. Deblanc and Daniels overheard them say they were going to put this inmate into full bed restraints to protect him from harm. (*Id.*) Daniels alleges that he was treated differently from this white inmate because Daniels is black. (*Id.*) Around 2:20 a.m. a nurse arrived to clean Daniels' cuts and she asked when he cut himself. (*Id.*) Daniels responded that the cuts occurred around 12:00 p.m. (*Id.*) The nurse asked the officers why she was not contacted sooner. (*Id.*) Daniels alleges the officers did not contact the nurse sooner because they did not care. (*Id.*)

Daniels alleges that on July 27, 2017, around 10:00 a.m., Sgt. Voigt (a defendant in Daniels' lawsuit No. 17-CV-680) ordered Officer Hess to take Daniels' papers and legal work and books. (*Id.* at 4.) Daniels alleges that he was mad and pushed his intercom and

stated that he was going to do self-harm and began cutting himself with a pen. (*Id.*) Officer Hess told him to stop and Sgt. Voigt came to Daniels' door with a team. (*Id.*) Daniels was taken out of his cell. (*Id.*) At 10:30 a.m., Lt. Nelson and Sgt. Voigt denied Daniels medical care and placed him in observation around 11:10 a.m. (*Id.*) Daniels started doing self-harm again. (*Id.*) Officer Demer said to let Daniels cut himself. (*Id.*)

Around 12:15 p.m., Daniels was able to see Nurse Larson. (*Id.*) Daniels alleges that Lt. Nelson was supposed to place him in full bed restrains pursuant to his behavior management plan, but failed to do so. (*Id.*) Daniels alleges that he told Dr. Van Buren to place him in full bed restrains, but she refused. (*Id.*) Daniels alleges that Lt. Nelson wrote an incident report stating that he received a call that Daniels had cut himself and that Lt. Nelson contacted H.S.U. staff and a nurse arrived and treated Daniels' cuts. (*Id.*) The report stated that Daniels was placed in clinical observation and was strip searched and given a smock and black mat. (*Id.*) Daniels alleges that Lt. Nelson's report was fabricated to cover up his misconduct. (*Id.*)

*Analysis*

Daniels alleges that all of the defendants violated his rights under the Eighth Amendment by failing to intervene and prevent his self-harm and through deliberate indifference to his medical care. Daniels further alleges that Sgt. Voigt harassed him, Lt. Kuepper, Lt. Nelson, and Sgt. Voigt retaliated against him, and Lt. Nelson engaged in misconduct.

1. *Failure to Prevent Harm*

Prison officials have a duty to "ensure that inmates receive adequate food, clothing, shelter, and medical care." *Estate of Miller, ex rel. Bertram v. Tobiasz*, 680 F.3d 984, 989 (7th

Cir. 2012) (internal quotation and citation omitted). To determine whether an inmate's Eighth Amendment rights were violated by a deprivation, the alleged violation is examined both objectively and subjectively. "First, the deprivation alleged must be objectively, sufficiently serious." *Sanville v. McCaughtry*, 266 F.3d 724, 733 (7th Cir.2001) (quoting *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)). "Second, the mental state of the prison official must have been 'one of deliberate indifference to inmate health or safety.'" *Id.*

In order to satisfy the first element, when a claim is based upon the failure to prevent harm, the plaintiff must show that the inmate was "incarcerated under conditions posing a substantial risk of serious harm." *Estate of Miller*, 680 F.3d at 989 (internal quotation and citation omitted). Suicide is a serious harm. *Id.* Under the second prong, "deliberate indifference," "'a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" *Id.* (quoting *Sanville*, 266 F.3d at 734).

Viewing all of the well-pleaded allegations in the complaint and construing all reasonable inferences in the light most favorable to Daniels, it is plausible that each of the defendants were subjectively aware of Daniels' serious medical condition (i.e., that he was a risk of engaging in self-harm) and either knowingly or recklessly disregarded it. Daniels alleges that a behavior management plan was in place in which he was supposed to be placed in full bed restraints due to his tendency to engage in self-harm. He alleges that all of the defendants knew about this plan and did not care.

Daniels alleges that Officers Geschke and Johnson gave him a hard tray and left his food trap open, despite knowing he was on observation status. He further alleges that Sgt. Tritt, Officer Pach, and Sgt. Bouzak saw him with the hard tray, knowing he should not have it, and did nothing about it. Daniels alleges that Officer Pach and Sgt. Bouzak saw him injure himself with the tray and failed to act.

Daniels alleges that he told Lt. Kuepper and Dr. Deblanc that he intended to continue engaging in self-harm and neither did anything about it. Daniels alleges that he began cutting himself and Officer Peter saw blood all over his cell and refused to act. Further, Daniels alleges that all of the defendants were aware of his cutting behavior and failed to act. Based on these allegations, I will allow Daniels to proceed on his claim against all defendants that they failed to prevent him from harming himself.

    2.    *Deliberate Indifference to Medical Care*

The Eighth Amendment protects prisoners from a state actor's "deliberate indifference to his basic needs." *Cavalieri v. Shepard*, 321 F.3d 616, 620 (7th Cir. 2003). In order to prove a state actor's failure to provide adequate medical treatment, a prisoner must show that: (1) he or she had a serious medical need; and (2) the defendant(s) was deliberately indifferent to it. *Wynn v. Southward*, 251 F.3d 588, 593 (7th Cir. 2001). An objectively serious medical need is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Zentmyer v. Kendall County, Illinois*, 220 F.3d 805, 810 (7th Cir. 2000) (internal citations omitted). Moreover, deliberate indifference entails more than "mere negligence," *Farmer*, 511 U.S. at 836, and requires the prisoner to show that the prison official was subjectively aware of the prisoner's serious medical needs and

8

disregarded an excessive risk that a lack of treatment posed to the prisoner's health or safety. *Id.* at 837.

The Seventh Circuit is clear insofar as it recognizes "the right to be free from deliberate indifference to suicide" *Cavalieri*, 321 F.3d at 623 (citing *Hall v. Ryan*, 957 F.2d 402, 406 (7th Cir. 1992)), and has likewise upheld liability wherein prison staff ignored an inmate's visible symptoms of serious illness. *Thomas v. Cook Cnty. Sheriff's Dep't*, 604 F.3d 293, 302 (7th Cir. 2010). Deliberate indifference to a risk of suicide is present when an official is subjectively "aware of the significant likelihood that an inmate may imminently seek to take his own life" but "fail[s] to take reasonable steps to prevent the inmate from performing the act." *Collins v. Seeman*, 462 F.3d 757, 761 (7th Cir. 2006) (citing *Estate of Novack ex rel. Turbin v. Cnty. of Wood*, 226 F.3d 525, 530 (7th Cir. 2000)). An official must be "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists" and the official "must also draw the inference." *Higgins v. Corr. Med. Servs. of Ill., Inc.*, 178 F.3d 508, 511 (7th Cir. 1999) (quoting *Farmer*, 511 U.S. at 837).

Again, I find that Daniels' complaint plausibly states a claim under the Eighth Amendment against all defendants. Daniels alleges that all of the defendants were aware that he was under a behavior management plan due to his risk of self-harm. Daniels alleges three specific instances of self-harm: (1) harm with the hard tray on February 17, 2017; (2) cutting himself on February 18, 2017; (3) cutting himself on July 27, 2017. Daniels alleges that Officers Geschke and Johnson, Sgt. Tritt, Officer Pach, Sgt. Bouzak, Lt. Kuepper and Dr. Deblanc were aware that he was harming himself with the tray and failed to take any steps to prevent his self-harm. Similarly, Officer Peter, Sgt. Keller, Capt. Olson, Lt. Nelson, and Dr. Deblanc were aware that he was cutting himself and failed to take any steps to stop

9

the self-harm. Daniels further alleges that once seeing he was injured, Sgt. Bouzak, Capt. Olson, and Lt. Nelson denied him medical care. Daniels also alleges that, based on his July 27, 2017 cutting incident, Sgt. Voigt and Lt. Nelson denied him medical care. For these reasons, I will allow Daniels to proceed on his deliberate indifference to medical care claim against all defendants.

   3.   *Harassment Claims Against Sgt. Voigt*

Daniels alleges Sgt. Voigt harassed him by ordering Officer Hess to take his legal papers out of his cell for no reason. (Am. Compl. at 5.) Standing alone, verbal abuse or harassment does not constitute cruel and unusual punishment, deprive a prisoner of a protected liberty interest, or deny a prisoner equal protection of the laws. *DeWalt v. Carter*, 224 F.3d 607, 612 (7th Cir. 2000). Daniels' assertion that Sgt. Voigt removed his legal papers to harass him fails to rise to the level of a cognizable constitutional violation. Therefore, I will not allow Daniels to proceed on a harassment claim against Sgt. Voigt.

   4.   *Retaliation Claims Against Lt. Kuepper, Lt. Nelson, and Sgt. Voigt*

Daniels alleges that Lt. Kuepper asked him whether he was planning on continuing to engage in self-harm, to which Daniels responded affirmatively. Daniels alleges that Lt. Kuepper said that he did not care and retaliated against him because it was a "PREA case of sexual abuse." (Am. Compl. at 3.) Daniels further alleges retaliation by Lt. Nelson and Sgt. Voigt, without pointing to any specific facts. (Am. Compl. at 5.)

An act taken in retaliation for the exercise of a constitutionally protected right violates the Constitution. *DeWalt*, 224 F.3d at 618. To establish a claim of retaliation, Daniels must show that he engaged in a protected activity, suffered a deprivation likely to prevent future protected activities, and that there was a causal connection between the two.

*See Watkins v. Kasper*, 599 F.3d 791, 794 (7th Cir. 2010); *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009). "To state a cause of action for retaliatory treatment, a complaint need only allege a chronology of events from which retaliation may be inferred." *DeWalt*, 224 F.3d at 618 (internal quotation and citation omitted).

Even liberally construed, Daniels' complaint fails to state a claim of retaliation against Lt. Kuepper, Lt. Nelson, or Sgt. Voigt. Daniels does not allege that he was engaging in a protected activity or that he suffered a deprivation likely to prevent future protected activities. For these reasons, Daniels may not proceed on a retaliation claim against Lt. Kuepper, Lt. Nelson, or Sgt. Voigt.

5. *Misconduct by Lt. Nelson*

Daniels alleges that Lt. Nelson fabricated a false report in order to cover up his misconduct. (Am. Comp. at 4-5.) Even assuming Lt. Nelson did make a false statement, lying does not violate the constitution. *Larry v. Meisner*, No. 16-CV-1108, 2016 WL 5390882, at *5 (E.D. Wis. Sept. 27, 2016). Even if Daniels received a false conduct report or even if he was ultimately found guilty of a false conduct report, this will not, on its own, give rise to a constitutional violation. *Id.* Although Lt. Nelson's alleged misconduct does not state a cause of action in and of itself, it may potentially constitute evidence of deliberate indifference. For these reasons, I will not allow Daniels to proceed on a misconduct claim against Lt. Nelson.

6. *Motion to for Protective Order*

Daniels filed a motion for protective order, requesting that I order the defendants to preserve evidence. (Docket # 46.) While Daniels mentions that disciplinary records can be purged after one year and expresses concern this might happen, he has not presented

11

evidence that gives me reason to believe that an order is necessary. As I explained in my order in Daniels' other lawsuit, 17-CV-680, I am confident that the defendants are aware of their responsibilities under the Federal Rules of Civil Procedure to ensure relevant discoverable materials are not destroyed. At this time, I will deny Daniels' motion without prejudice. If circumstances change, Daniels may renew his motion.

       7.      *Motion for Emergency Relief*

Daniels has also filed a motion that he entitled a motion for emergency relief. (Docket # 44.) He filed this identical motion in 17-CV-680. In it, Daniels reiterates that he believes that he is not getting adequate mental health care. He asks for various forms of relief—namely that I grant his motion for appointment of counsel (in 17-CV-680) and his motion for a preliminary injunction and a temporary restraining order, and also asks that he be able to call in to provide me with more information.

As I explained in my order in 17-CV-680, Daniels' claims all must be in a single complaint. When plaintiffs spread claims and allegations through multiple documents, they risk having claims overlooked—and make it more difficult for the court and the defendants to understand their claims. Additional facts that Daniels presents outside of the complaint will not serve as a basis for relief. He is already proceeding against the defendants on claims of failure to prevent harm and deliberate indifference. While he could add more instances of alleged deliberate indifference and failure to prevent harm to his complaint, it will not provide him with more relief should he win this lawsuit. As I already instructed him, if Daniels feels these allegations should be included in the complaint, he should consult the Federal Rules of Civil Procedure, particularly Rules 15, 18, and 20, which discuss amending pleadings and when it is appropriate to join (that is, to have in the same lawsuit) claims and

defendants. Continuing to file additional allegations outside of the complaint, and requesting relief that has already been requested, will only slow down the processing of the case.

   *8.  Motion for Preliminary Injunction and Temporary Restraining Order*

Finally, Daniels filed a motion for a preliminary injunction and temporary restraining order. (Docket # 26.) I am ordering the defendants to respond to this motion within **30 days** of this order. Once the defendants file a response, Daniels has **14 days** to file a reply.

**NOW, THEREFORE, IT IS ORDERED** that Daniels may proceed with his Eighth Amendment claims of failure to prevent harm and deliberate indifference against all defendants. He may not proceed on a harassment claim against Sgt. Voigt; a retaliation claim against Lt.Keupper, Lt. Nelson, or Sgt. Voigt, or a misconduct claim against Lt. Nelson.

**IT IS FURTHER ORDERED** that Daniels' motion for protective order (Docket # 46) is **DENIED WITHOUT PREJUDICE**.

**IT IS ALSO ORDERED** that Daniels' motion for relief (Docket # 44) is **DENIED**.

**IT IS ALSO ORDERED** that the defendants have **30 days** from the date of this order to file a response to Daniels' motion for a preliminary injunction and a protective order. Once the defendants respond, Daniels has **14 days** to file a reply.

**IT IS FURTHER ORDERED** that, under an informal service agreement between the Wisconsin Department of Justice and this court, the clerk's office electronically send copies of the plaintiff's complaint and this order to the Wisconsin Department of Justice for

service on defendants Dr. Deblanc, Captain Olson, Lt. Kuepper, Lt. Nelson, Sgt. Tritt, Sgt. Bouzak, Sgt. Keller, C.O. Geschke, C.O. Johnson, C.O. Pach, C.O. Peter, and Sgt. Voigt.

**IT IS FURTHER ORDERED** that, under an informal service agreement between the Wisconsin Department of Justice and this court, defendants Dr. Deblanc, Captain Olson, Lt. Kuepper, Lt. Nelson, Sgt. Tritt, Sgt. Bouzak, Sgt. Keller, C.O. Geschke, C.O. Johnson, C.O. Pach, C.O. Peter, and Sgt. Voigt file a responsive pleading to the complaint within sixty days of receiving electronic notice of this order.

**IT IS FURTHER ORDERED** that the parties may not begin discovery until after the court enters a scheduling order setting deadlines for discovery and dispositive motions.

**IT IS FURTHER ORDERED** that, under the Prisoner E-Filing Program, Daniels shall submit all correspondence and case filings to institution staff, who will scan and email documents to the court. If plaintiff ceases to be incarcerated at a Prisoner E-Filing institution, he will be required to submit his objections to:

> Office of the Clerk
> United States District Court
> Eastern District of Wisconsin
> 362 United States Courthouse
> 517 E. Wisconsin Avenue
> Milwaukee, Wisconsin 53202

PLEASE DO NOT MAIL ANYTHING DIRECTLY TO THE JUDGE'S CHAMBERS. It will only delay the processing of the case.

The court advises Daniels that, if he fails to file documents or take other required actions by the deadlines the court sets, the court may dismiss the case based on his failure to prosecute. The parties must notify the clerk of court of any change of address. Failure to do so could result in orders or other information not being timely delivered, thus affecting the legal rights of the parties.

Dated at Milwaukee, Wisconsin this 4th day of April, 2018.

                                              BY THE COURT

                                              *s/Nancy Joseph*_____
                                              NANCY JOSEPH
                                              United States Magistrate Judge