REMO HARRISON DANIELS,

                    Plaintiff,

    v.                                  Case No. 17-cv-681-pp

KRISTINA deBLANC, *et al.*,

                    Defendants.

**ORDER DENYING WITHOUT PREJUDICE PLAINTIFF'S MOTIONS TO APPOINT COUNSEL (DKT. NOS. 80, 83, 85, 88, 104); DENYING PLAINTIFF'S MOTION FOR CERTIFICATION (DKT. NO. 101); GRANTING PLAINTIFF'S MOTION FOR EXTENSTION OF TIME (DKT. NO. 107); AND CONSTRUING PLAINTIFF'S MOTION TO ALARM THE COURT (DKT. NO. 118) AS MOTION TO COMPEL AND ORDERING DEFENDANTS TO RESPOND BY END OF DAY FRIDAY, FEBRUARY 1, 2019**

The plaintiff is an inmate at Green Bay Correctional Institution and is representing himself. The case is before the court on several motions to appoint counsel, dkt. nos. 80, 83, 85, 88, 104, a motion for certification, dkt. no. 101, and a motion for an extension of time, dkt. no. 104. The plaintiff also has filed a motion to alarm the court, dkt. no. 118, which the court construes as a motion to compel the defendants to produce video footage. The court will grant the plaintiff's motion for an extension of time, but it will deny the remaining motions except the motion to compel; it will require the defendants to respond to that motion by the end of the day on February 1, 2019.

**A.      MOTIONS TO APPOINT COUNSEL**

Over the last four months, the plaintiff filed five motions asking the court to appoint counsel for him in this case and another case he has pending (case no. 17-cv-680). In a civil case, the court has the discretion to recruit counsel

for individuals unable to afford one. Navejar v. Iyola, 718 F.3d 692, 696 (7th Cir. 2013); 28 U.S.C. §1915(e)(1); Ray v. Wexford Health Sources, Inc., 706 F.3d 864, 866-67 (7th Cir. 2013). First, the plaintiff must make reasonable efforts to hire counsel on his own. Pruitt v. Mote, 503 F.3d 647, 653 (7th Cir. 2007).

After the plaintiff demonstrates that he has made those efforts, the court must decide "whether the difficulty of the case—factually and legally—exceeds the particular plaintiff's capacity as a layperson to coherently present it." Navejar, 718 F.3d at 696 (citing Pruitt, 503 F.3d at 655). The court looks not only at a plaintiff's ability to try his case, but also at his ability to perform other "tasks that normally attend litigation," such as "evidence gathering" and "preparing and responding to motions." Id. "[D]eciding whether to recruit counsel 'is a difficult decision: Almost everyone would benefit from having a lawyer, but there are too many indigent litigants and too few lawyering willing and able to volunteer for these cases.'" Henderson v. Ghosh, 755 F.3d 559, 564 (7th Cir. 2014) (quoting Olson v. Morgan, 750 F.3d 708, 711 (7th Cir. 2014)).

The plaintiff asserts that he had contacted over twenty-three attorneys at the time he filed his first motion for the appointment of counsel. Dkt. Nos. 82, 82-1. The court is satisfied that the plaintiff met the first Pruitt requirement, and has demonstrated that he has tried to find an attorney on his own.

The court will not grant the plaintiff's motions, however, because it finds that the plaintiff can represent himself at this stage. Many of the issues the plaintiff has identified are issues faced by many incarcerated plaintiffs: a lack of legal training, limited access to legal materials, mental illness, a limited education and lack of money to hire a lawyer. The court understands that those issues make it harder to pursue a lawsuit than it would be if the plaintiff

had a lawyer. But based on the motions the plaintiff has filed, and the letters he has written, the court believes that the plaintiff is doing a pretty good job of representing himself. He has shown that he can clearly explain what happened to him that caused him to file the lawsuit, and what has happened so far in the lawsuit. While he has filed a lot of documents—maybe more than someone who has a lawyer would file—the court has been able to understand every one of his filings. He presents logical arguments in support of his requests; even when the court does not agree with what he is asking for, it understands what he is asking for, and why. He has filed some fairly complex legal requests, such as motions for a preliminary injunction, for a protective order and for sanctions.

In his motions to appoint counsel, the plaintiff says that the issues in his case are complex. In fact, his allegations are straightforward: he alleges that despite the fact that he had a behavior management plan in place to prevent him from harming himself (something he had a history of doing), the defendants made it possible for him to beat himself with a hard meal tray, denied him medical care for the resulting injuries, returned him to his cell despite his telling them that he was going to continue to harm himself, joked after he cut himself, refused to put him in restraints to protect him, and provided a white inmate restraint protection (the plaintiff is African-American). Dkt. No. 21 at 3-5.

One of the issues about which the plaintiff raises concerns is the fact that summary judgment is difficult. At this point, both the plaintiff and the defendants have filed motions for summary judgment, and the parties have fully briefed them. The court will rule on those motions in a separate order. If any of the plaintiff's claims survive summary judgment, the court will again consider his request for an attorney.

The plaintiff also has expressed concerns about the defendants refusing to give him documents he needs (he also has accused them of lying). On January 7, 2019, the court received a document from the plaintiff titled "Motion to Alarm the Court's." Dkt. No. 118. That motion says that the plaintiff had written to the court and informed it that the defendants were "trying to hold evidence," and that the court told him to try to work it out with them. Id. at 1. The court believes that the plaintiff is referring to a motion he filed in one of his other cases, Daniels v. Foster, *et al.*, 17-cv-680, in which he filed a motion to prevent spoliation, indicating that he was worried that the defendants were going to destroy some video footage, dkt. no. 27; Judge Joseph responded to the plaintiff that she was quite sure that the defendants were aware of their obligations to preserve evidence, dkt. no. 45. The plaintiff says that he tried to work things out with the defendants. Dkt. No. 118 at 1. He says that he asked the defendants for video footage from various dates, but that they told him they didn't have footage for many of those dates. Id. The plaintiff does not believe the defendants. He says that they turned footage over to him in another case—Daniels v. Beahm, 17-cv-1080-pp—and wonders why, if they could provide the footage to him in that case, they could not provide it to him in this one. Id. at 2. He asks this court to review "Exhibit 1000" in connection with this argument. Id.

Since May 2015, the plaintiff has filed nine cases in this district. Currently, he has three open cases—this one, Daniels v. Foster, *et al.*, 17-cv-680, and Daniels v. Beahm, *et al.*, 17-cv-1080. While all three cases are assigned to this court, the court is not able to recall every exhibit filed in each case or every document filed in each case. The court does not know which of these cases contains Exhibit 1000, or what it is.

In the interest of trying to resolve this issue, the court will construe this motion as a motion to compel production of video evidence, and will order the defendants to file a response by the end of the day on Friday, February 1, 2019.

**B. MOTION FOR CERTIFICATION (DKT. NO. 101) AND MOTION FOR EXTENSTION OF TIME (DKT. NO. 107)**

On December 3, 2018, the court received from the plaintiff a motion for "certification, asking whether the defendants had filed a motion for summary judgment. Dkt. No. 101. The court received this motion fifteen days after the defendants filed their motion for summary judgment, and the court notes that there was a holiday during that time (Thanksgiving) on which there was no mail delivery. The same day the court received the plaintiff's motion, it received both a response and an amended response from the defendants; the amended response indicated that the defendants had filed their motion for summary judgment on November 19, 2018, and indicated that as a courtesy they were sending the plaintiff another copy. Dkt. No. 103. The next day, the court received a motion from the plaintiff, asking for additional time to respond to the defendants' summary judgment motion. Dkt. No. 107. (The court since has received his response, dkt. no. 109, along with his response to the defendants' proposed findings of fact, dkt. no. 110, and his declaration, dkt. no. 111.)

The court will deny the plaintiff's motion for certification, because the defendants have addressed his concerns. The court will grant his motion for an extension of time to respond, *nunc pro tunc* (going back to) December 19, 2018, which is the date the court received his response.

**C. CONCLUSION**

The court **DENIES without prejudice** the plaintiff's motions to appoint counsel. Dkt. Nos. 80, 83, 85, 88, 104.

5

The court **DENIES** the plaintiff's motion for certification. Dkt. No. 101.

The court **GRANTS** the plaintiff's motion for an extension of time to respond, *nunc pro tunc* to December 19, 2018; the court **ORDERS** that the plaintiff's response to the defendants' motion for summary judgment was timely filed. Dkt. No. 104.

The court **ORDERS** that by the end of the day on February 1, 2019, the defendants shall respond to the plaintiff's motion to compel. Dkt. No. 118.

Dated in Milwaukee, Wisconsin, this 14th day of January, 2019.

**BY THE COURT:**

**HON. PAMELA PEPPER**
**United States District Judge**